THE OHIO STATE BAR ASSOCIATION, APPELLEE, *v.* MAYER, APPELLANT.

(J. D. No. 78-1—Decided June 28, 1978.)

432

Mr. *John R. Welch*, Mr. *Albert L. Bell*, Mr. *Harlan S. Hertz* and Mr. *Eugene Balk*, for appellee.

Messrs. *Vorys, Sater, Seymour & Pease*, Mr. *Russell P. Herrold, Jr.*, Mr. *Larry R. Thompson* and Mr. *James J. Mayer*, for appellant.

*Per. Curiam.* Appellant's first proposition of law asserts that the evidence does not support the finding and order of the commission that he should be retired for disability.

In his brief, appellant admits that the "medical evidence in this case is clear and uncontroverted." The commission, in its Findings and Order summarized that evidence as follows:

"The evidence established, and the respondent in his brief candidly admits, that beginning in 1961 respondent experienced numerous health problems. In 1961 respondent contracted viral encephalitis, African sleeping sickness. Prior to 1973 he experienced increasing problems of sleeplessness and depression. He used alcoholic beverages to excess and in October of 1973 engaged in a public brawl with the manager of a Lima restaurant. Thereafter he was admitted to the University Hospital in Columbus where he was diagnosed as being a manic depressive.

"Lithium carbonate was prescribed for respondent. The proper dosage was determined to be one which would maintain a blood level of Lithium at .7%. Respondent was released from University Hospital on November 15, 1973.

In October 1974 respondent was advised that he had massive cancer of the large intestine. Thereafter all except the last foot of that organ was removed.

"Carcinoma of the liver was also found. Respondent was released in November 1974. Thereafter, he suffered rectal and urinary incontinence, diarrhea and severe vomiting. As a result of these afflictions, respondent could not or did not maintain the required .7% Lithium level.

"On May 11, 1975, respondent entered the Cleveland Clinic to undergo surgery for the removal of a portion of his liver affected by cancer. Following his release he took a variety of medication. This produced several side effects, including incontinence. Respondent's Lithium level, because of this and also a failure to take the proper dosage, was not maintained at the proper level. Respondent again returned to the Cleveland Clinic for treatment relative to his Lithium level, diarrhea, vomiting, asthmatic and prostate problems.

"The medical evidence is undisputed that surgery has probably arrested the carcinoma of the intestine and that the respondent has lived beyond the life expectancy of persons who have had surgery involving carcinoma of the liver. Further the respondent offered probative evidence that his manic depressive mental condition is controlled through the maintenance of a .7% level of Lithium Carbonate in his blood."

Appellant refers to the testimony of two psychiatrists to the effect that appellant's condition of manic depression is presently controlled by medication; he contends that "* * * the finding of the Commission that Respondent *now* suffers from such disability which presently prevents the proper discharge of the duties of his office is clearly erroneous."

Section 7 of Gov. R. VI, reads:

"Mental disability shall mean the condition defined in R. C. 5122.01(A) which presently prevents the proper discharge of the Judge's duties.

"Physical disability shall mean the impairment of the faculties of a Judge, which has prevented the proper dis-

charge of his judicial duties for more than six months. Failure to be present in Court or to perform usual judicial functions for six months or more shall raise a presumption of physical disability.

"The Commission shall make such determination of disability based upon the testimony adduced before it. Expert medical testimony may be received by the Commission, and it may name medical experts to examine the respondent, with his consent."

R. C. 2701.12(B) provides:

"Grounds for retirement of a judge from office for disability exist when he has a permanent physical or mental disability which prevents the proper discharge of the duties of his office."

Appellant argues that: "Since *all* the medical evidence is to the effect that Respondent does not suffer from any present disability which *now* prevents his performance of his job, and since all the evidence shows that he *now* is able to and actually *now* is properly performing his duties, the Commission's Findings and Order are not supported by any—let alone substantial—clear and convincing evidence * * *."

In its Findings and Order, the commission stated:

"When respondent's Lithium level is not maintained, his history, as adduced by the evidence, establishes by clear and convincing evidence that he enters into the manic or hypo manic phase of manic depression, suffers from delusions, and has paranoid symptoms. Respondent contends that since January 1976 he is properly, adequately and fully controlled and no concern should be felt for his proper handling of his judicial duties.

"A majority of the Commission regretfully does not agree.

"Evidence was submitted supporting by clear and convincing evidence the allegations contained in the complaint. We find therefore that respondent * * * engaged in acts which violated Canon 1, Canon 2A of the Code of Judicial Conduct and Canons 4 and 34 of the Canons of Judicial Ethics. He has engaged in such acts as resulted in a

substantial loss of public respect for his judicial office, brought his judicial office into disrepute and has engaged in conduct prejudicial to the administration of justice."

In support of the foregoing conclusions, the commission referred to evidence showing that "* * * respondent in letters, in a brief which he prepared, duplicated and disseminated 25 copies, in conversations and at public meetings referred to a fellow judge as a liar, a cruel sadist, as the Godfather, as part of the Gilligan Mafia, a. k. a. the Dirty Dozen, that the Prosecuting Attorney of the county belonged to the Mafia and was incompetent * * * ."

The provisions of the Code of Judicial Conduct and Canons of Judicial Ethics cited by the commission read as follows:

"Canon 1. A Judge Should Uphold the Integrity and Independence of the Judiciary.

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

"Canon 2 A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

"Canon 4. Avoidance of Impropriety.

"A judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior, not only upon the Bench and in the performance of judicial duties, but also in his every day life, should be beyond reproach."

"Canon 34. A Summary of Judicial Obligation.

"In every particular his conduct should be above reproach. He should be conscientious, studious, thorough, courteous, patient, punctual, just, impartial, fearless of public clamor, regardless of public praise, and indifferent

to private political or partisan influences; he should administer justice according to law, and deal with his appointments as a public trust; he should not allow other affairs or his private interests to interfere with the prompt and proper performance of his judicial duties, nor should he administer the office for the purpose of advancing his personal ambitions or increasing his popularity."

The record amply demonstrates that when appellant's lithium level is not properly maintained he has engaged in conduct violative of the foregoing canons. Given appellant's present physical condition, there is ever-present a latent possibility of recurrence of the conditions which precipitate erratic and non-judicious conduct. Bearing in mind that Gov. R. VI, as stated in Section 13, is to be "***liberally construed for the protection of the public and the Courts***," this court concludes that the commission did not err in finding that appellant "*** has a physical and mental disability which prevents the proper discharge of the duties of his office."

In his second proposition of law appellant urges that his "*** acts while experiencing severe medical problems in 1973 through 1975 are not acts of misconduct which require or support that he now be retired, removed or suspended from the position to which he has been repeatedly elected."

Noting that there has not been "* * * any suggestion that Respondent was engaged in any misconduct involving moral turpitude or *** committed or been convicted of any crime," appellant argues that the absence of any willful violation of the canons precludes the imposition of any penalty, and that he should not be penalized for things beyond his control. Appellant cites the language of R. C. 27-01.12 providing for discipline of a judge for "any misconduct involving moral turpitude, or a violation of such of the canons of judicial ethics adopted by the Supreme Court as would result in a substantial loss of public respect for the office," and to Section 1 of Gov. R. IV. That section reads, in part:

" * * * The Code of Judicial Conduct * * * shall be

binding upon all judicial officers of this state, and the willful breach thereof shall be punished by reprimand, suspension or disbarment, as provided in Rule V, or by retirement, removal or suspension from office, as provided in Rule VI of the Supreme Court Rules for the Government of the Bar of Ohio.''

Appellant's argument with respect to the necessity of a finding of a willful violation of the canons is not well taken. Although the commission found that appellant's acts "resulted in a substantial loss of public respect for his judicial office," the commission ordered that appellant be "retired for disability" pursuant to R. C. 2701.-12(B). Willful misconduct is obviously not a prerequisite to a finding that a judge be retired for physical or mental disability. It is equally obvious that violation of the Code of Judicial Conduct can result from acts induced in whole or in part by a disability over which a person has no control.

Appellant's next contention is that the findings of misconduct by the commission are premised upon application of a lower standard of proof than R. C. 2701.12 and Gov. R. VI require. It is argued that: "Both * * * [Gov. R. VI and R. C. 2701.12] mandate that it was incumbent for Relator to show that the alleged acts of misconduct constituting a violation of Canons 'would result in substantial loss of public respect for the office' (Section 2701.-12) or 'would bring the judicial office into disrepute' ([Gov. R. VI])." Appellant urges that both Gov. R. VI and R. C. 2701.12 "require that the test of probability or certainty of loss of respect for the office is not a 'slight' or 'possible' one." Appellant asserts that the commission "wrongly concluded" that: "The use of the word 'would' in both the statute and the rule are such as to require that there be clear and convincing evidence of conduct that would 'tend' to bring the office into a disrepute or 'tend' to result in a substantial loss of public respect."

The commission concluded that it was not necessary for the relator to "establish that the respondent's conduct would 'in fact' result in a substantial loss of public re-

spect or disrepute for the office." This court agrees with that conclusion.

The inclusion of the word "would" in R. C. 2701.12 adds a condition to the statute which implies that it is not necessary to show actual "loss of public respect for the office." This court is satisfied that the commission employed the proper test and that its reference to the word "tend" in determining whether appellant's actions "would result in substantial loss of public respect for the office" or "would bring the judicial office into disrepute" does not affect the validity of the conclusion reached by the commission.

Appellant contends that the evidence does not support a finding of "substantial loss of public respect for the office" by clear and convincing evidence and that the findings that he violated certain canons are manifestly against the weight of the evidence. Upon consideration of the record, particularly the conduct alluded to by the commission in its Findings and Order, this court finds these contentions to be without merit.

Appellant asserts that his actions upon which the Findings and Order of the commission are premised all relate to statements of appellant which are protected by the First Amendment to the United States Constitution and the Ohio Constitution.

Appellant cites *Garrison* v. *Louisiana* (1964), 379 U. S. 64, wherein a district attorney's conviction under a criminal defamation statute for making disparaging remarks about Louisiana judges was reversed on grounds that the statute abridged his First Amendment rights. Citing *Bates* v. *State Bar of Arizona,* 433 U. S. 350, appellant states "* * * it is now obvious that rules regulating the Bar or conduct of other professionals are not exempt from First Amendment scrutiny."

In rejecting appellant's free speech contentions, the commission referred to the comments of Justice Stewart in a concurring opinion in *In re Sawyer* (1959), 360 U. S. 622, 646, 647, as follows:

" * * * A lawyer belongs to a profession with inherit-

ed standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.

"Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech."

The admonition contained in the Commentary to Canon 2 of the Code of Judicial Conduct is worthy of quotation here. It reads:

"Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."

This court finds appellant's free speech contentions to be not well taken.

The final issue raised by appellant concerns the validity of the statutes, rules and canons under which these disciplinary proceedings have been conducted. Appellant argues that they are "unconstitutionally vague and overbroad" in violation of his due process rights.

This broad attack on the canons, statutes and rules for the discipline of judicial officers is not persuasive. Similar arguments have failed in other jurisdictions. See, e. g., In the Matter of Del Rio (1977), 400 Mich. 665, 256 N. W. 2d 727; Annotation 53 A. L. R. 3d 882.

The order of the commission is affirmed.

*Order affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and STEPHENSON, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for LOCHER, J.